UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH MICHAEL DEVON ENGEL, ) <br> ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> JEFFERSON COUNTY SHERIFF'S ) <br> DEPARTMENT, et al., ) <br> ) <br>     Defendants. ) | No. 4:20 CV 1226 MTS |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of plaintiff Joseph Michael Devon Engel (registration no. 1069055), an inmate at Eastern Reception, Diagnostic and Correctional Center ("ERDCC"), for leave to commence this action without pre-payment of the required filing fee. Doc. [2]. The Court will grant the motion and, for the reasons stated below, will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, the Court will dismiss the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff did not submit an inmate trust account statement along with the instant motion, as required. On October 14, 2020, this Court entered an order directing plaintiff to file the statement within thirty days. On November 9, 2020, plaintiff filed a long memorandum averring, *inter alia*, that he cannot obtain such statement. As a result, the Court will assess an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess a "reasonable" amount).

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed *in forma pauperis* if, *inter alia*, it is frivolous, malicious, or fails to state a claim upon which relief can be granted. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). Dismissals on this ground should only be ordered when legal theories are "indisputably meritless," or when the claims rely on factual allegations that are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). "Clearly baseless" factual allegations include those that are "fanciful," "fantastic," and "delusional." *Id.* at 32-33 (quoting *Neitzke*, 490 U.S. at 325, 327). "As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* at 33.

An action is malicious when it is undertaken for the purpose of harassing the named defendants rather than vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1061 (4th Cir. 1987). An action can also be considered malicious if it is part of a longstanding pattern of abusive and repetitious lawsuits. *In re Tyler*,

839 F.2d 1290, 1293 (8th Cir. 1988) (per curiam). *See Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996) (when determining whether an action is malicious, the Court need not consider only the complaint before it, but may also consider the plaintiff's other litigious conduct).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

**The Complaint**

Plaintiff prepared the complaint using this Court's form Prisoner Civil Rights Complaint Under 42 U.S.C. § 1983. Plaintiff describes himself as a sovereign citizen, and he names as defendants the Jefferson County Sheriff's Department, the Missouri Department of Corrections (also "MDOC"), Corizon, and a health care entity named "Vision Health Care" that plaintiff describes as associated with the Jefferson County Sheriff's Department. The statement of claim is a disjointed, stream of consciousness narrative concerning various topics. It neither describes a

valid theory of recovery, nor alleges facts from which the Court can discern a plausible claim. Plaintiff's allegations include the following.

Upon plaintiff's arrival at the MDOC, an officer told him that "the machine" would not let him put down his "full government name," which plaintiff believes amounts to wrongdoing that entitles him to relief. Doc. [1] at 3. The State of Missouri and the Department of Corrections has allowed others to use plaintiff's name and steal his identity. Plaintiff's life is in danger because "staff" "won't do their job." *Id.* at 4. Plaintiff, his cell mate, and other offenders have medical issues that are not addressed. Plaintiff neither describes a particular medical issue, nor describes a situation in which he was denied requested medical care.

Plaintiff has not been provided with the services of a notary, and he is "treated by some like the rest when I should be in a protective custody unit." *Id.* Plaintiff does not explain why he should be in protective custody. Plaintiff is being held against his will and should not be in the MDOC because his criminal charges were reduced. A caseworker did not give him civil rights complaint forms or certain writing materials, and used offensive language. Plaintiff witnessed disturbing events, including a fellow inmate urinating in the shower, another inmate cuffed to a bench, and another inmate being sprayed with mace.

Plaintiff also complains about the diet provided to prisoners. He claims that snack bags are not readily provided and prisoners are not given requested food, and he notes that a particular religious diet consists of fruit, peanut butter, white meat, chicken, tuna, and crackers. Plaintiff writes: "I have been trying to get my special tray. This is the money that I want to put back into Missour[i] my way. I only want 5 million dollars. And all lawyer fees doctor's bills and my debt fixed right. This law suit is [separate from] the other ones." *Id.* at 5. Plaintiff alleges nothing tending to suggest that the prison diet is nutritionally inadequate, nor does he describe an occasion on which he requested and was denied a particular diet.

4

"Vision Health Care that is contracted out by Jeff Co" did not "take care of [plaintiff's] medical needs" because he was told his x-rays were "fine." *Id.* Plaintiff has been slandered, and cannot use the telephone. Plaintiff claims "it would cut down on a lot of fights [and] trouble if they let [us] smoke again." *Id.* at 6. Plaintiff's bottom-bunk lay-in is not honored. Plaintiff writes, "it is just plain inhuman the razors we get to use," "I have had one toothbrush for a month," and prison conditions are unhealthy. *Id.* at 6-7. He claims he has diplomatic immunity and should therefore be housed in a single-person cell.

As relief, plaintiff asks this Court to order that "everyone" in the MDOC be "whipped." *Id.* at 8. He also seeks an award of 500 million dollars in damages, and he demands that the money be paid to various persons and entities. For example, he demands that 100 million be used for a new county jail, 10 million be used to benefit the homeless population in Jefferson County, 10 million given to Washington County, 70 million used for new business parks in De Soto, and 2 million "for upkeep Harry S. Truman House all this comes out of the 500 million." *Id.* at 1. Plaintiff also seeks "60 million for mental anguish, my freedo[m], mental health, regular health Frank Peters 10 million. Eddie Yount 1 million/30 million crime victim fund Missouri United Methodist Church in Arnold 20 million Jefferson County 85 million/my family 50 million." *Id.* at 8. Plaintiff includes other such instructions.

After filing the complaint, plaintiff filed a lengthy supplemental document. In the document, plaintiff states he is not receiving medical care, but he describes no particular situation in which he requested and was denied medical care. Plaintiff asks this Court to award him hundreds of trillions of dollars in damages against various persons and entities, and he describes the manner in which he intends to spend the money. For example, plaintiff writes: "want to buy United Vanlines," "want to buy the old rock [quarry] in Cedar Hill get it up and runnin[g]," "any and all property for sale in Hillsboro," and "100 million dollars to making

5

Jefferson College a better college." Doc. [6] at 2. Plaintiff also asks the Court to award him various stocks. For example, he writes: "100,000 stocks in in oil, coal, lead, zinc, gold, silver, steel, precious metals, platinum, Visa, Mastercard, US Military, Germany, China, Japan, [France], Russia, Saudi Arabia, [Israel], Iran . . . Kevin Westrich & family full scholarships full medical dental 1 million in Acorns [account] 1 million cash." *Id*.

## Discussion

The complaint is subject to dismissal. Plaintiff's claims against the MDOC are barred by the Eleventh Amendment. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (generally, "in the absence of consent a suit in which the State or one of its agencies or departments is named is proscribed by the Eleventh Amendment"); *see also Walker v. Missouri Dept. of Corrections*, 213 F.3d 1035, 1036 (8th Cir. 2000) (recognizing the MDOC as a State agency that is entitled to Eleventh Amendment immunity). Section 1983 does not abrogate the Eleventh Amendment immunity of states and their agencies. *See Murphy v. State of Arkansas,* 127 F.3d 750, 754 (8th Cir. 1997). The Jefferson County Sheriff's Department is not an entity that can be sued under § 1983. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such). Plaintiff's allegations do not state a plausible claim against Corizon or "Vision Health Care," or against any other corporation acting under color of state law. *See Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978)) (describing § 1983 liability for a corporation acting under color of state law). Finally, while plaintiff obviously intends to bring a myriad of claims in this action, he offers nothing more than "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements" that the Supreme Court has found deficient, *Iqbal*, 556 U.S. at 678, and that this Court is not required to presume

6

true. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level").

It also appears the complaint is factually frivolous as described in *Denton v. Hernandez*. Plaintiff either sets forth irrational allegations (such as entitlement to a single-person cell due to "diplomatic immunity" or that the MDOC is allowing others to steal his identity), or he asserts entitlement to hundreds of millions of dollars in damages to compensate him for things such as being given a low-quality razor, using the same toothbrush for a month, not having ready access to snack bags or the services of a notary, and the fact his full name was not entered into ERDCC's records. Plaintiff also indicates an intent to seek hundreds of trillions of dollars and stocks from entities with no apparent connection to this action, and he sets forth a lengthy series of bizarre instructions either directing the distribution of the money or describing the manner in which he intends to spend it. Considered as a whole, plaintiff's allegations and prayer for relief are "clearly baseless" under the standard articulated in *Denton v. Hernandez,* 504 U.S. at 32-33, and the complaint is subject to dismissal for this reason, as well.

Finally, it appears this action is malicious. One form of relief that plaintiff seeks is for everyone in the Missouri Department of Corrections to be "whipped." This evidences an intent to cause harm rather than vindicate a cognizable right. Additionally, since filing this action, plaintiff has filed nearly 80 other complaints in this Court alleging that his civil rights have been violated by these defendants and other state and local entities and officials. Those complaints are composed in roughly the same manner as the one now before the Court, and plaintiff often specifies that he intends the pleadings to be filed as separate civil actions. It therefore appears that this action is part of an attempt to harass these defendants and others by bringing repetitious lawsuits, not a legitimate attempt to vindicate a cognizable right. *See Spencer*, 656 F. Supp. at

7

461-63 (an action is malicious when it is undertaken for the purpose of harassing the defendants rather than vindicating a cognizable right); *see also Tyler*, 839 F.2d 1290 (noting that an action is malicious when it is a part of a longstanding pattern of abusive and repetitious lawsuits). This action is subject to dismissal for this reason, as well.

Having considered plaintiff's abusive litigation practices and the manner in which he prepared the instant complaint, the supplemental document, and other civil complaints, the Court concludes that it would be futile to permit plaintiff leave to file an amended complaint in this action. The Court will therefore dismiss this action at this time pursuant to 28 U.S.C. § 1915(e)(2).

Plaintiff is cautioned to avoid abusive litigation practices. A prisoner who has filed three or more lawsuits that were dismissed for one of the reasons stated in 28 U.S.C. § 1915(e)(2) is subject to 28 U.S.C. § 1915(g), which limits his future ability to obtain *in forma pauperis* status. Additionally, the practice of repeatedly filing meritless lawsuits is abusive to this Court, and wastes judicial resources. This Court is "vested with the discretion to impose sanctions upon a party under its inherent disciplinary power." *See Bass v. General Motors Corp.*, 150 F.3d 842, 851 (8th Cir. 1998). This includes the discretion to craft and impose sanctions to deter litigants from engaging in "conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991). *See Tyler*, 839 F.2d at 1292 (affirming the district court's *sua sponte* determination that a litigant should be limited to filing one lawsuit per month pursuant to certain conditions precedent as a sanction for the litigant's repeated abuse of the judicial process). These powers stem from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* Doc. [2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel Doc. [3] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

Dated this 28nd day of December, 2020.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE